JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment & Natural Resources Division

THOMAS K. SNODGRASS, Senior Attorney
Colorado Bar No. 31329
Environment & Natural Resources Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Tel: (303) 844-7233
Fax: (303) 844-1350
Email: Thomas.Snodgrass@usdoj.gov

ROBERT P. WILLIAMS, Senior Trial Attorney
District of Columbia Bar No. 474730
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 305-0206
Fax: (202) 305-0275
Email: robert.p.williams@usdoj.gov

*Attorneys for United States Bureau of Reclamation*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
MEDFORD DIVISION

**KLAMATH IRRIGATION DISTRICT**,

Movant,

v.

**UNITED STATES BUREAU OF RECLAMATION**,

Respondent.

Case No.: 1:21-cv-00504-AA

**UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

INTRODUCTION ..... 1

BACKGROUND ..... 4

STANDARD OF REVIEW ..... 7

ARGUMENT ..... 8

I. KID is not likely to succeed on the merits. ..... 10

A. KID's Motion is predicated upon the resolution of issues of law that are outside the scope of the waiver of sovereign immunity under the McCarran Amendment. ..... 10

B. KID's Motion represents a collateral attack on the District of Oregon's dismissal of KID's prior lawsuit raising similar claims. ..... 17

C. Federal courts have repeatedly held that federal law requirements arising under the ESA and senior federal reserved tribal fishing and water rights can require Reclamation to limit diversions of Project irrigators (including those within Klamath Irrigation District). ..... 20

II. KID fails to demonstrate it is likely to suffer harm that is irreparable in the absence of a preliminary injunction. ..... 25

III. The balance of the equities and the public interest favor denial of the requested injunction, which would prevent Reclamation from complying with the ESA and fulfilling senior federal reserved water and fishing rights. ..... 26

IV. Denying KID's preliminary injunction motion would preserve the status quo. ..... 29

CONCLUSION ..... 31

## TABLE OF AUTHORITIES

**Cases**

*Alvarado v. Table Mountain Rancheria*,
509 F.3d 1008 (9th Cir. 2007) ..... 10

*Arizona v. California*,
373 U.S. 546 (1963) .......... 7
*Arizona v. Manypenny*,
451 U.S. 232 (1981) .......... 16
*Arizona v. San Carlos Apache Tribe of Arizona*,
463 U.S. 545 (1983) .......... 18, 19
*Baley v. United States*,
942 F.3d 1312 (Fed. Cir. 2019) .......... passim
*California v. United States*,
490 U.S. 920 (1989) .......... 12
*Cappaert v. United States*,
426 U.S. 128 (1976) .......... 7
*Carson-Truckee Water Conservancy Dist. v. Clark*,
741 F.2d 257 (9th Cir. 1984) .......... 21
*Chalk v. U.S. Dist. Ct. Cent. Dist. of California*,
840 F.2d 701 (9th Cir. 1988) .......... 29
*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) .......... 12, 18
*Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*,
789 F.3d 1075 (9th Cir. 2015) .......... 26
*Dept. of the Army v. Blue Fox, Inc.*,
525 U.S. 255 (1999) .......... 11
*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1073 (9th Cir. 2014) .......... 8
*Dugan v. Rank*,
372 U.S. 609 (1963) .......... 12
*Ethridge v. Harbor House Rest.*,
861 F.2d 1389 (9th Cir. 1988) .......... 16
*Fed. Aviation Admin. v. Cooper*,
566 U.S. 284 (2012) .......... 11, 16
*Fed. Deposit Ins. Corp. v. Meyer*,
510 U.S. 471 (1994) .......... 10
*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) .......... 8, 23, 29
*Granny Goose Foods, Inc. v. Teamsters*,
415 U.S. 423 (1974) .......... 7
*Henderson v. United States*,
517 U.S. 654 (1996) .......... 10
*In re Elko Cnty. Grand Jury*,
109 F.3d 554 (9th Cir. 1997) .......... 16

*Innovation L. Lab v. Nielsen*,
310 F. Supp. 3d 1150 (D. Or. 2018)........................................................................................ 8
*Kandra v. United States*,
145 F. Supp. 2d 1192 (D. Or. 2001)...................................................................................... 20
*Kittitas Reclamation Dist. v. Sunnyside Valley Irr. Dist.*,
763 F.2d 1032 (9th Cir. 1985)............................................................................................... 21
*Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*,
489 F. Supp. 3d 1168 (D. Or. 2020)............................................................................ 3, 17, 18
*Klamath Water Users Protective Ass'n v. Patterson*,
204 F.3d 1206 (9th Cir. 1999)............................................................................................... 20
*Lambert Run Coal Co. v. Baltimore & O.R. Co.*,
258 U.S. 377 (1922) .............................................................................................................. 16
*Lands Council v. McNair*,
537 F.3d 981 (9th Cir. 2008)................................................................................................. 21
*Lane v. Pena*,
518 U.S. 187 (1996) ........................................................................................................ 11, 17
*Los Angeles Memorial Coliseum Comm'n v. National Football League*,
634 F.2d 1197 (9th Cir. 1980)............................................................................................... 25
*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009)............................................................................................. 8, 29
*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
567 U.S. 209 (2012) .............................................................................................................. 12
*McCarthy v. United States*,
850 F.2d 558 (9th Cir. 1988)................................................................................................. 10
*Metro. Water Dist. of S. California v. United States*,
830 F.2d 139 (9th Cir. 1987)................................................................................................. 12
*Miller v. Jennings*,
243 F.2d 157 (5th Cir. 1957)................................................................................................. 13
*Minnesota v. United States*,
305 U.S. 382 (1939) .............................................................................................................. 16
*Munns v. Kerry*,
782 F.3d 402 (9th Cir. 2015)................................................................................................. 11
*Nat'l Marine Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
886 F.3d 803 (9th Cir. 2018)............................................................................................. 8, 26
*Nat'l Parks & Conservation Ass'n v. Babbitt*,
241 F.3d 722 (9th Cir. 2001)................................................................................................. 25
*Nat'l Wildlife Fed. v. Burlington N. R.R., Inc.*,
23 F.3d 1508 (9th Cir. 1994)................................................................................................. 28
*National Association of Home Builders v. Defenders of Wildlife,*
551 U.S. 644 (2007) .............................................................................................................. 23

*Navajo Nation v. U.S. Dep't of the Interior*,
876 F.3d 1144 (9th Cir. 2017) ........................................ 11
*Orff v. United States*,
545 U.S. 595 (2005) ........................................ 11, 17
*Pacific Coast Federation of Fishermen's Associations v. U.S. Bureau of Reclamation*,
138 F. Supp. 2d 1228 (N.D. Cal. 2001) ........................................ 21
*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*,
499 F.3d 1108 (9th Cir. 2007) ........................................ 21
*Regents of Univ. of Cal. v. Am. Broad. Cos.*,
747 F.2d 511 (9th Cir. 1984) ........................................ 25
*S. Delta Water Agency v. U.S., Dep't of Interior, Bureau of Reclamation*,
767 F.2d 531 (9th Cir. 1985) ........................................ 13
*San Luis & Delta-Mendota v. NMFS*,
747 F.3d 581 (9th Cir. 2014) ........................................ 23
*Shaffer v. Heitner*,
433 U.S. 186 (1977) ........................................ 15
*Sierra Club v. Marsh*,
816 F.2d 1376 (9th Cir. 1987) ........................................ 26
*State of Nevada ex rel. Shamberger v. United States*,
279 F.2d 699 (9th Cir. 1960) ........................................ 13
*Tenn. Valley Authority v. Hill,*
437 U.S. 153 (1978) ........................................ 26, 29
*Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*,
594 F.2d 730 (9th Cir. 1979) ........................................ 11
*United States v. Dist. Court for Eagle County, Colo.*,
401 U.S. 520, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971) ........................................ 12, 15
*United States v. Mitchell*,
463 U.S. 206 (1983) ........................................ 10
*United States v. Navajo Nation*,
537 U.S. 488 (2003) ........................................ 10
*United States v. Oakland Cannabis Buyers' Co-op.*,
532 U.S. 483 (2001) ........................................ 28
*United States v. Oregon*,
44 F.3d 758 (9th Cir. 1994) ........................................ 12, 13
*United States v. Park Place Assocs., Ltd.*,
563 F.3d 907 (9th Cir. 2009) ........................................ 11
*United States v. Shaw*,
309 U.S. 495 (1940) ........................................ 11
*United States v. Sherwood*,
312 U.S. 584 (1941) ........................................ 10

*United States v. White Mountain Apache Tribe*,
537 U.S. 465 (2003) ........................................ 11
*Winter v. Natural Resources Defense Council, Inc.*
555 U.S. 7 (2008) ........................................ 7, 19
*Winters v. United States*,
207 U.S. 564 (1908) ........................................ 7
*Yurok Tribe v. U.S. Bureau of Reclamation*,
231 F. Supp. 3d 450 (N.D. Cal. 2017) ........................................ 20, 26

**Statutes**

16 U.S.C. § 1531 ........................................ 29
16 U.S.C. § 1536(a)(2) ........................................ 1, 22, 28
28 U.S.C. § 1442(a)(1) ........................................ 1, 16
28 U.S.C. § 1491 ........................................ 24
43 U.S.C. § 383 ........................................ 22
43 U.S.C. § 666 ........................................ 2, 12, 18
Oregon Rev. Stat. 539.005 ........................................ 14

**Rules**

Fed. R. Civ. P. 81(c) ........................................ 8
Fed. R. Civ. P. 65 ........................................ 1, 25
Oregon Rule of Civil Procedure 79(a) ........................................ 7, 8

**Regulations**

70 Fed. Reg. 69 ........................................ 6
53 Fed. Reg. 27 ........................................ 4
62 Fed. Reg. 24 ........................................ 4
64 Fed. Reg. 24 ........................................ 6

Pursuant to Federal Rule of Civil Procedure 65 and Local Rule 7-1, the United States Bureau of Reclamation ("United States" or "Reclamation") responds in opposition to Klamath Irrigation District's ("KID") Emergency Motion for Preliminary Injunction (ECF 1-1) ("Motion"). Because the Court lacks subject matter jurisdiction over the Motion and KID otherwise fails to satisfy the requirements for preliminary injunctive relief, the Motion should be denied.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

KID has moved for a preliminary injunction against Reclamation in the Klamath Basin Adjudication ("KBA"), a general stream adjudication in Oregon state court that is in the process of determining the existence, priority, and extent of competing water rights claims in the portion of the Basin located in Oregon. KID seeks to enjoin Reclamation from making releases from Upper Klamath Lake in Oregon into the Klamath River to meet the requirements of the federal Endangered Species Act ("ESA"), 16 U.S.C. § 1536(a)(2) *et seq*., and be consistent with federal reserved tribal water and fishing rights. Section 7(a)(2) of the ESA requires federal agencies to ensure that "any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of" a listed species or destroy or adversely modify designated critical habitat. 16 U.S.C. § 1536(a)(2). The expert agencies charged with implementing the ESA have determined that the operations in question meet the requirements of ESA Section 7. As a civil proceeding seeking a judicial order against an agency of the United States involving significant issues of federal law, the United States properly removed the Motion from the Klamath County Circuit Court of Oregon to this Court pursuant to 28 U.S.C. § 1442(a)(1). *See* ECF 1 (setting forth basis for removal).

The Motion should be denied. Of principal importance, the United States has not waived sovereign immunity for purposes of considering KID's request for preliminary injunctive relief through the KBA, and the Court therefore lacks subject matter jurisdiction. The McCarran Amendment ("McCarran"), 43 U.S.C. § 666(a), waives the United States' sovereign immunity for the limited purposes of joinder to the determination of competing water rights claims in comprehensive general stream adjudications, such as the KBA, and the subsequent administration of such water rights once determined. But KID's Motion does not present an issue within the scope of the general stream adjudication.

The relief requested by KID involves neither an adjudication of competing water rights claims within the KBA, nor the subsequent administration of water rights determined in the KBA. Rather, KID's Motion seeks to litigate the federal question of whether Reclamation must hold a water right determined in the KBA in order to release water from Upper Klamath Lake based on federal law requirements that apply to Klamath Project operations—namely, Section 7(a)(2) of the ESA and senior reserved water rights of the Yurok and Hoopa Valley Tribes in California.[1] *See* Motion at 20-23. The state court in the KBA lacks jurisdiction to address these federal law questions, and the removal of the Motion to this Court does not confer that jurisdiction. KID's Motion should be denied on that basis alone.

In fact, in a prior action in this District, which is the subject of a Notice of Related Case filed by the United States (ECF 5), Judge McShane reached a similar conclusion. In that case, as here, KID argued that water stored in Upper Klamath Lake under Oregon state-law based water

[1] Here, as discussed below, there are three ESA-listed species—two "endangered" fish species in Upper Klamath Lake (suckers) and another "threatened" fish species in the Klamath River in California (salmon)—on which Reclamation must consult under the ESA in its operation of the Klamath Project.

rights determined in the KBA cannot be released to meet the requirements of the ESA. Magistrate Clarke recommended and Judge McShane granted dismissal of that lawsuit for failure to join the Hoopa Valley Tribe and the Klamath Tribes as necessary and indispensable parties. In so ruling, the Court rejected KID's argument that the lawsuit came within the waiver of sovereign immunity provided by the McCarran Amendment. *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 489 F. Supp. 3d 1168, 1181 (D. Or. 2020) (determining that the case was not a McCarran proceeding, and, even if it were, there would be no waiver of the Tribes' sovereign immunity). KID has appealed, arguing as the lead argument in its opening brief that the District Court erred in determining the case was not a McCarran proceeding. *See* Ex. 1 (attached). KID should not be allowed to pursue a collateral attack on that dismissal, now pending on appeal, by filing its present motion raising similar issues.

Given these jurisdictional defects in KID's Motion, KID cannot demonstrate a likelihood of success on the merits, because the Court lacks subject matter jurisdiction even to reach the merits. Should the Court nonetheless determine it necessary to undertake further analysis of the preliminary injunction factors, KID fails to satisfy its burden as to each. As to the substantive basis of KID's Motion, KID is not likely to prevail on the merits of its claim that Reclamation cannot release stored water from Upper Klamath Lake to satisfy the ESA and be consistent with downstream, senior reserved tribal fishing and water rights without a state-law based water right. For over two decades, the law of this Circuit has been that Klamath Project operations must comply with the ESA and senior reserved tribal rights (including those held by California tribes), and the federal courts have consistently affirmed that state-law based water rights must yield to the ESA and downstream tribal water rights, to the extent state and federal law conflict. KID also fails to show that it is likely to suffer harm that is irreparable unless a preliminary injunction

is awarded. KID relies on allegations of injury to individual irrigators that, while significant as described by KID, are economic in nature. Precedent holds that such economic injuries are not deemed irreparable. By contrast, granting KID's requested injunction is likely to cause harm to listed species protected under the ESA—which is irreparable. Lastly, KID's alleged economic harms are outweighed by the public interest in ensuring the survival of ESA-listed species. KID has failed on all counts to demonstrate entitlement to the extraordinary remedy of preliminary injunctive relief.

## BACKGROUND

Reclamation operates the Klamath Project, which delivers water to Project irrigators for the irrigation of approximately 200,000 acres in southern Oregon and northern California. The primary Project water source, Upper Klamath Lake, was a natural lake with natural storage capacity prior to the construction of the Project. Project improvements allowed Reclamation for the first time to regulate lake levels through its operation of Link River Dam, including the ability to drain the lake to below natural levels, but did not substantially increase maximum capacity or provide significant carry-over storage from one year to the next.

Upper Klamath Lake is designated as critical habitat for two species of sucker fish, which were listed as "endangered" throughout their range under the ESA in 1988. 53 Fed. Reg. 27,130 (July 18, 1988). These species are significant to the Klamath Tribes, which hold reserved fishing and water rights associated with the suckers in Upper Klamath Lake and its tributaries. The Klamath River downstream of the Project also provides critical habitat to Southern Oregon/Northern California Coast ("SONCC") coho salmon, which were listed as "threatened" under the ESA in 1997, 62 Fed. Reg. 24,588 (May 6, 1997). SONCC coho are significant to the

Yurok and Hoopa Valley Tribes, which also hold reserved fishing and water rights associated with the coho (and other species) in the river.

Dating back to at least 1996, Reclamation has operated the Klamath Project to meet ESA requirements and be consistent with senior tribal water rights by maintaining certain lake levels in Upper Klamath Lake to ensure that Project operations do not jeopardize endangered suckers in the lake, as well as to release water downstream to ensure that Project operations do not jeopardize SONCC coho. The Klamath Tribes' water rights have been administratively determined and quantified in the on-going KBA, and those rights are currently being reviewed in Oregon state court. The Yurok and Hoopa Valley Tribe's reserved water rights related to their reserved fishing rights have not been adjudicated, but have been determined to be at least co-extensive with what the ESA requires for threatened SONCC coho salmon. *Baley v. United States*, 942 F.3d 1312, 1337 (Fed. Cir. 2019), *cert. denied*, 141 S. Ct. 133, 207 L. Ed. 2d 1078 (2020).

In fulfilling its obligations under the ESA, Reclamation consults with the U.S. Fish & Wildlife Service ("FWS") and the National Marine Fisheries Service ("NMFS"), which determine whether Project operations are likely to jeopardize the continued existence of listed species under the ESA or destroy or adversely modify their critical habitat. FWS is the consulting agency for freshwater species, including the two species of endangered suckers in Upper Klamath Lake; NMFS is the consulting agency for marine and anadromous species, such as the threatened SONCC coho that inhabit both freshwater and saltwater habitat. NMFS designated critical habitat for SONCC coho in 1999, which includes most of the Klamath River

below Iron Gate Dam in California.[2] 64 Fed. Reg. 24,049 (May 5, 1999).

Reclamation has consulted with NMFS and FWS under the ESA on operation of the Klamath Project since the listing of these three species. The Services have issued various biological opinions over the years, which have spawned multiple rounds of litigation. Generally, to avoid ESA jeopardy, FWS and NMFS have determined, respectively, that Reclamation must operate the Project in a manner that maintains sufficient water in Upper Klamath Lake to ensure survival of suckers, while at the same time providing enough flows downstream to ensure survival of SONCC coho. For ESA compliance purposes, the release of water to support these flows is a statutorily-imposed limitation on Reclamation's action of operating the Klamath Project to divert, store, and deliver available water for the beneficial use of Project irrigators, such as KID; it is not a separate and distinct use of water for Reclamation's own instream purposes, as characterized by KID. In a good water year, Reclamation can operate the Project consistent with ESA requirements for suckers and coho, while also providing substantial irrigation water. In dry water years like 2021, it is not possible to meet fully all competing needs.

KID is an irrigation district that receives water through Klamath Project facilities for irrigation use by its members within the district's boundaries. KID seeks a preliminary injunction against Reclamation based on its allegation that the ESA and/or senior federal

---

[2] In addition, the Klamath River downstream of the Project also provides habitat for unlisted Chinook salmon, which are significant to the Yurok and Hoopa Valley Tribes and a primary prey species for the endangered Southern Resident killer whale. 70 Fed. Reg. 69,903 (November 18, 2005). Impacts to Chinook salmon and their habitat needs are similar to those of SONCC coho in relation to flows in the Klamath River, and Reclamation must consult with NMFS under the ESA on the Project's effect on the whale. Flows downstream that are part of Reclamation's operations plan to ensure survival of SONCC coho also apply to survival of Chinook, and, in turn, the Southern Resident killer whale. NMFS has concluded that the flows in the operations plan are not likely to jeopardize the continued existence of the Southern Resident killer whale.

reserved water rights held for tribal fishery needs in California cannot require Reclamation to release stored water from Upper Klamath Lake without an Oregon state-law based water right. KID contends in its Motion that the relatively recent Amended and Corrected Finding of Fact and Order of Determination ("ACFFOD") issued by the Oregon Water Resources Department ("OWRD") in the KBA on February 28, 2014, which is currently undergoing review before the Klamath County Circuit Court, forbids such releases from Link River Dam, even to meet ESA requirements and be consistent with downstream tribal reserved rights. *See*, *e.g*., Motion at 5-8. KID further contends that, whether centered on the ESA or on the federal reserved water rights doctrine,[3] federal law does not permit Reclamation to release water for any reason not specifically authorized under Oregon law in the ACFFOD. *See*, *e.g.*, *id*. at 3, 8-9, and 20-23.

## STANDARD OF REVIEW

A preliminary injunction is an extraordinary remedy, and the movant has the burden to prove by clear and convincing evidence that the remedy is appropriate. *See Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 442-43 (1974). In *Winter v. Natural Resources Defense Council, Inc.*, the Supreme Court set out a four-factor test: "[a] plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." 555 U.S. 7, 20 (2008).[4] "Because it

---

[3] The federal reserved water rights doctrine, from *Winters v. United States*, 207 U.S. 564 (1908) and subsequent case law applying that decision, stands for the proposition that the establishment of a federal reservation implicitly reserves sufficient water to accomplish the purposes of the reservation. *Id.* at 576; *Cappaert v. United States*, 426 U.S. 128, 139 (1976); *Arizona v. California*, 373 U.S. 546, 597-602 (1963).

[4] KID filed its original motion for preliminary injunction under Oregon Rule of Civil Procedure 79(a), which lays out a three-factor test for preliminary injunctive relief. However, in cases removed to federal court, federal standards for preliminary injunctive relief control. *Granny*

is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three [*Winter* elements]." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citations and internal quotation marks omitted). As to the third and fourth factors—the balance of equities and public interest—these factors "merge" when the federal government is a party to a preliminary injunction request. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). In litigation involving the ESA, both of these factors—balance of harm and the public interest—are presumed to weigh in favor of protecting listed species. *Nat'l Marine Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 817 (9th Cir. 2018).

"[T]he already high standard for granting a preliminary injunction is further heightened when the type of injunction sought is a 'mandatory injunction.'" *Innovation L. Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 (D. Or. 2018) (quoting *Garcia*, 786 F.3d at 740). A mandatory injunction goes "well beyond simply maintaining the status quo" and is "particularly disfavored" and "not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009) (quotation marks and citation omitted).

**ARGUMENT**

KID has failed to establish by clear and convincing evidence that the extraordinary remedy of a mandatory injunction is appropriate here. As to the likelihood of success on the merits, KID has failed to allege an adequate waiver of the United States' sovereign immunity, which is a stand-alone reason to deny KID's request for preliminary injunctive relief. Contrary

---

*Goose Foods*, 415 U.S. at 437-38; Fed. R. Civ. P. 81(c). Ultimately, the distinction is immaterial, as the four-factor *Winter* test comprises all of the factors from ORCP 79(a).

to KID's presentation of the law as governed solely by the ACFFOD and Oregon state statutes, the primary issues raised in its Motion are those of federal law, federal statutes, and federal reserved rights for tribes in California that are beyond the jurisdiction of the KBA.

Even if jurisdiction were proper, the substance of KID's Motion repeats arguments regarding Reclamation's operation of the Project that have already been rejected in prior federal court litigation.[5] Indeed, several federal courts have already denied the proposition that the Klamath Project must fulfill junior, state-law based water rights for irrigation ahead of providing water for federal-law based ESA obligations and senior federal reserved water rights in Oregon and California. These prior failed attempts by KID and others to litigate the same legal issues and claims against Reclamation demonstrate that KID is not likely to succeed on the merits of its current challenge.

KID also fails to satisfy the remaining factors for preliminary injunctive relief. Specifically, KID alleges economic injuries to individual irrigators, which, although significant as described by KID, cannot be classified as irreparable. Further, these alleged harms are outweighed by the public interest in ensuring the very survival of ESA-listed species and critical habitat, and in providing the bare minimum amount of water for senior federal reserved fishing and water rights of tribes downstream.

Finally, KID seeks to affirmatively change—on a purportedly "emergency" basis—the longstanding status quo by which Reclamation has operated the Project for many years to comport with federal ESA obligations and senior federal reserved water rights downstream from

[5] Nothing herein waives any procedural or substantive arguments of the United States as to the merits of KID's claims, and the United States expressly reserves all such arguments, including but not limited to KID's claims being barred by the doctrines of *res judicata* and/or collateral estoppel based upon arguments that KID and its privies made or could have made in prior proceedings.

the Project in California. In place of these operations, KID would have the Court rule that generally applicable federal law does not govern Project operations and order Reclamation to make significant operational changes to make additional water available to KID for its irrigation needs—all at the expense of ESA-listed species, critical habitat, and tribal fishing and water rights that federal courts have determined take precedence over irrigation demands.

## I. KID is not likely to succeed on the merits.

### A. KID's Motion is predicated upon the resolution of issues of law that are outside the scope of the waiver of sovereign immunity under the McCarran Amendment.

#### 1. KID has the burden of establishing a waiver of sovereign immunity, and the Court lacks subject matter jurisdiction in the absence of such a waiver.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Navajo Nation*, 537 U.S. 488, 502 (2003) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity is by nature jurisdictional, and the terms of the United States' 'consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Henderson v. United States*, 517 U.S. 654, 675-76 (1996) (internal citations omitted) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).

"The question whether the United States has waived its sovereign immunity against suits . . . is, in the first instance, a question of subject matter jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *see also*, *e.g.*, *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1015 (9th Cir. 2007) ("Sovereign immunity limits a federal court's subject matter

jurisdiction over actions brought against a sovereign."). When subject matter jurisdiction is challenged, the party bringing the action has the burden of proving jurisdiction. *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

Established canons of construction govern any court's determination on whether the United States has waived its sovereign immunity. Only Congress may determine the terms of any waiver of sovereign immunity. *See United States v. Shaw*, 309 U.S. 495, 503 (1940). The Supreme Court has frequently held that waivers of sovereign immunity must be strictly construed in the government's favor and must be unequivocally expressed in statutory text. *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 290 (2012); *Orff v. United States*, 545 U.S. 595, 601-02 (2005); *Dept. of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999) (citing cases). A waiver of sovereign immunity cannot be implied. *Lane v. Pena*, 518 U.S. 187, 192 (1996); *Munns v. Kerry*, 782 F.3d 402, 412 (9th Cir. 2015). Moreover, a claimant against the United States has the burden of establishing that a specific waiver of sovereign immunity exists. *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 924 (9th Cir. 2009). Thus, "[j]urisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity . . . , together with a claim falling within the terms of the waiver. . . ." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (citations omitted); *see also Navajo Nation*, 876 F.3d at 1167-68 ("As the contours of any such waiver define a court's authority to entertain a suit against the government . . . , each claim against the government must rest upon an applicable waiver of immunity." (citation omitted)).

**2. KID's Motion hinges upon complex questions of federal law that exceed the scope of the waiver of sovereign immunity under the McCarran Amendment.**

Although KID does not specifically articulate the source of a sovereign immunity waiver by the United States, a fair reading of the Motion reveals reliance on the McCarran Amendment.

43 U.S.C. § 666(a). KID asserts:

> The State of Oregon's power to adjudicate federal reserved water rights in the Klamath Adjudication has also been specifically confirmed by the Ninth Circuit Court of Appeals. *United States v. Oregon*, 44 F.3d 758, 770 (9th Cir. 1994) ("We hold that the Klamath Basin adjudication is in fact the sort of adjudication Congress meant to require the United States to participate in when it passed the McCarran Amendment.")

Motion at 5. The text of McCarran's waiver of sovereign immunity in general stream adjudications is short, specific, and limited. It provides in pertinent part: "consent is given to join the United States as a defendant in any suit for the adjudication of rights to the use of water of a river system or other source" and "for the administration of such rights." 43 U.S.C. § 666(a). By these terms, the waiver of sovereign immunity under the statute applies for the limited purpose of joining the United States to comprehensive general stream adjudications for the determination of competing water rights claims within a state and the subsequent administration of determined rights. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 810 (1976); *Dugan v. Rank*, 372 U.S. 609, 618 (1963); *Metro. Water Dist. of S. California v. United States*, 830 F.2d 139, 144 (9th Cir. 1987) ("The McCarran Amendment, however, does not authorize private suits to decide priorities between the United States and particular claimants, only suits to adjudicate the rights of all claimants on a stream."), *aff'd sub nom. California v. United States*, 490 U.S. 920 (1989), and *abrogated in irrelevant part by Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 132 (2012); *Baley*, 942 F.3d at 1341 ("Moreover, states have the ability to adjudicate rights in a water or river system within their jurisdiction*, but they cannot adjudicate water rights in another state*. *United States v. Dist. Court for Eagle County, Colo.*, 401 U.S. 520, 523, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971) ('No suit by any State could possibly encompass all of the water rights in the entire Colorado River which runs through or touches many states. The "river

system" must be read as embracing one within the particular State's jurisdiction.')."') (emphasis added); *S. Delta Water Agency v. U.S., Dep't of Interior, Bureau of Reclamation*, 767 F.2d 531, 541 (9th Cir. 1985) ("Congress intended a waiver of immunity under subsection (2) only after a general stream determination under subsection (1) has been made. . . .").

Contrary to KID's suggestion, McCarran does not waive the United States' sovereign immunity to permit any KBA water rights holder, such as KID, to seek injunctive relief from the United States over the questions of federal law concerning Reclamation's operation of the Klamath Project raised by the Motion. It is undisputed that the Ninth Circuit in *United States v. Oregon* determined that the McCarran Amendment waived the United States' sovereign immunity to subject the United States to the adjudication of its water rights *in Oregon* in the KBA. *United States v. Oregon*, 44 F.3d 758, 770 (9th Cir. 1994). But this holding in no way means that McCarran also waived sovereign immunity for parties to seek any independent injunctive relief from the United States based upon determination of complex questions of federal law that do not involve an intra-state adjudication of water rights. The McCarran Amendment's waiver of sovereign immunity does not apply to all suits involving water or water rights (including those involving neighboring states), much less those seeking declaratory and injunctive relief on such questions as whether a generally applicable federal law, such as the ESA, applies to Reclamation project operations. *See*, *e.g.*, *State of Nevada ex rel. Shamberger v. United States*, 279 F.2d 699, 701 (9th Cir. 1960) (suit "brought by the state against the United States to secure a decree establishing that the underground waters are the property of the State of Nevada, subject to the right of appropriation by the United States upon compliance with the laws of the state[,]" held not to be a general stream adjudication); *Miller v. Jennings*, 243 F.2d 157, 159 (5th Cir. 1957) ("The United States has not given its consent to be joined as a defendant in

every suit involving water rights. It may be made a party only in suits 'for the adjudication of rights to the use of water of a river system or other source.'").

A simple review of KID's Motion demonstrates that it hinges upon complex issues of federal law concerning Reclamation's operation of the Klamath Project that are far afield of issues of the existence, priority, and extent of competing water rights claims under McCarran. For instance, the Motion argues at length over the discretion held by Reclamation in its Project operations, the degree to which that discretion is sufficient to trigger any obligation to consult under the ESA, and whether federal law requires Reclamation to purchase or condemn water when needed for ESA obligations. Motion at 20-23. These arguments ultimately conclude that "the ESA does not entitle Reclamation to use stored water in [Upper Klamath Lake] without a water right; rather it creates an obligation that Reclamation use its discretionary powers to avoid jeopardy to endangered species." Motion at 22. These issues are not ones that can be resolved in a general stream adjudication, because they far exceed the scope of the waiver of sovereign immunity under McCarran. Again, the McCarran Amendment waives the United States' sovereign immunity for purposes of joinder to general stream adjudications resolving competing water rights claims, not for declaratory and injunctive relief relating to complex questions of federal law concerning the ESA obligations inherent in the operation of a federal Reclamation project.

Likewise, KID errs in complaining that Reclamation may not release water from Upper Klamath Lake based on senior tribal reserved rights in California. *See*, *e.g.*, Motion at 3. The KBA has jurisdiction over the adjudication of water rights *in Oregon* under Oregon Rev. Stat. 539.005 *et seq.*; accordingly, the storage right adjudicated to the Project in the ACFFOD was determined as between Oregon users and can only be administered and enforced as such.

But no statute authorizes suit against the United States to generally litigate complex questions of federal law concerning Indian reserved water rights entirely outside Oregon. No colorable basis therefore exists to support a claim that sovereign immunity has been waived by the United States through the McCarran Amendment to litigate the extent or existence of tribal reserved rights in California and the extent to which they may (or may not) be satisfied out of water "stored" in Upper Klamath Lake under Oregon law. *See Shaffer v. Heitner*, 433 U.S. 186, 198 (1977) ("Any attempt 'directly' to assert extraterritorial jurisdiction over persons or property would offend sister States and exceed the inherent limits of the State's power.").

*Baley v. United States*, 942 F.3d 1312 (Fed. Cir. 2019), a suit initiated by KID among others, has already held that KID is not free to simply sue the United States in the KBA concerning its obligations in California. There, irrigators raised the same contention—that rights and interests in California were required to be raised in the KBA. The *Baley* court squarely rejected this.

> Nor do we believe that the [California tribes] waived their rights because they did not participate in the [KBA]. For the reasons discussed above, their rights are federal reserved water rights not governed by state law. Moreover, states have the ability to adjudicate rights in a water or river system within their jurisdiction, but *they cannot adjudicate water rights in another state. United States v. Dist. Court for Eagle County, Colo.*, 401 U.S. 520, 523, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971) ("No suit by any State could possibly encompass all of the water rights in the entire Colorado River which runs through or touches many states. The 'river system' must be read as embracing one within the particular State's jurisdiction."). Thus, the [California Tribes'] lack of participation in the [KBA] did not preclude their entitlement to water that flows in the Klamath River below the Iron Gate Dam in California.

*Baley*, 942 F.3d at 1341 (emphasis added). As the United States has consistently informed KID and others for decades, the United States manages Link River Dam and stores water for irrigation purposes in Oregon and for the Klamath Tribes treaty purposes in Oregon. These water rights

are the proper subject of the KBA, and sovereign immunity has been waived to address the adjudication of these rights as between competing water right claimants in Oregon. But the United States *also* manages Link River Dam consistent with requirements related to the ESA and senior tribal reserved rights in California. These water interests *are not* the subject of the KBA, and sovereign immunity has not been waived to address these interests.

**3. Removal does not create federal jurisdiction.**

Nor does removal to federal court cure these jurisdictional defects. As stated above, the United States properly removed this action pursuant to 28 U.S.C. § 1442(a)(1). And under the doctrine of derivative jurisdiction, "[i]f the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none [upon removal], although it might in a like suit originally brought there have had jurisdiction." *Lambert Run Coal Co. v. Baltimore & O.R. Co.*, 258 U.S. 377, 382 (1922); *see also Arizona v. Manypenny*, 451 U.S. 232, 242 n.17 (1981); *Minnesota v. United States*, 305 U.S. 382, 389 (1939). If a suit is removed to federal court because it involves a federal agency, the federal court exercises "a purely derivative form of jurisdiction, neither enlarging nor contracting the rights of the parties." *Manypenny*, 451 U.S. at 242 n.17; *see also In re Elko Cnty. Grand Jury,* 109 F.3d 554, 555 (9th Cir. 1997); *Ethridge v. Harbor House Rest*., 861 F.2d 1389, 1392 n.3 (9th Cir. 1988).

At bottom, KID's assertions of jurisdiction are contrary to the text of the McCarran Amendment and the requirement that waivers of sovereign immunity "must be 'unequivocally expressed' in the statutory text." *Fed. Aviation*, 566 U.S. at 290. KID's contentions are also directly at odds with the longstanding sovereign immunity principle that waivers are strictly construed in the Federal Government's favor, *see Orff*, 545 U.S. at 601-02, and that a waiver may not be implied, *see Lane*, 518 U.S. at 192. Indeed, KID asks the Court to determine that the

ESA does not require releases from Upper Klamath Lake to avoid jeopardy to threatened SONCC coho. KID also seeks the adjudication of Klamath Project rights as against federal reserved rights in California. Neither of these issues concerns the adjudication or administration of Oregon water rights as among parties to the KBA. Without a waiver of the United States' sovereign immunity, the Court lacks jurisdiction to consider the Motion, and KID cannot demonstrate a likelihood of success on the merits.

**B. KID's Motion represents a collateral attack on the District of Oregon's dismissal of KID's prior lawsuit raising similar claims.**

Consistent with the foregoing conclusions, Judge McShane of this Court recently dismissed a similar lawsuit filed by KID (and a second suit filed by another group of Klamath Project irrigators) against the United States for failure to join the Hoopa Valley and Klamath Tribes as necessary and indispensable parties. *Klamath Irrigation Dist.*, 489 F. Supp. 3d 1168; ECF 5. In that case, as here, KID challenged Reclamation's limitation of water diversions by Project water users and its alleged use of water in Upper Klamath Lake for instream flow purposes (both in Upper Klamath Lake and downstream of the Project in the Klamath River) in connection with ESA requirements and reserved water rights held for the Tribes:

> Plaintiffs' Second Amended Complaints allege, in essence, that Reclamation lacks statutory or other authority to comply with the ESA, or to protect tribal reserved water rights held for tribal fishery needs, by reducing the amount of water to be delivered to Project irrigators pursuant to their state water rights and their contracts with Reclamation. *See, e.g.*, S.A.C. TID (#73) ¶ 64 (alleging that "[n]either section 7(a)(2) of the ESA, nor any other authority or obligation that may be asserted by Defendants, confers legal power or authorities on Defendants to curtail diversion and use of water by and for Water Users or other Association members or their patrons"); S.A.C. TID (#70) ¶ 26 (alleging that Reclamation has "no discretion or authority to limit the amount of water" that KID and its landowners "are entitled to beneficially use under their water rights, to the extent such water is physically available, without otherwise condemning or appropriating KID's water rights and the rights of its landowners").

*Id.* at 1177-78; *compare* Motion at 23 ("if Reclamation truly requires water for some purpose other than what is set forth in the ACFFOD, Reclamation may compensate KID or others to lease their water rights instream. Alternatively, Reclamation may purchase KID's water rights and lease them instream itself in accordance with law.").

In adopting Magistrate Clarke's finding and recommendation in its entirety, Judge McShane ruled that the case should be dismissed because the Tribes were necessary and indispensable parties due, *inter alia*, to the effects the litigation could have on the Tribes' reserved fishing and associated reserved water rights, but that the Tribes could not be involuntarily joined by virtue of their sovereign immunity. 489 F. Supp. 3d at 1176-84. Judge McShane further rejected KID's contention that the claims should not be dismissed because the lawsuit constituted a suit for the administration of water rights under the McCarran Amendment:

> Plaintiffs argue that, even if the Tribes are required, they can be joined under the terms of the McCarran Amendment. Plf Resp. 32 (#83). The McCarran Amendment (also known as the McCarran Water Rights Suit Act), 43 U.S.C. § 666, waives federal sovereign immunity for state general stream adjudications, and that waiver extends to federal water rights reserved on behalf of Native American tribes. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 811-12, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). However, the waiver does not extend to the Tribes as parties, even in a McCarran Amendment case. *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 567, n.17, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983).
>
> The Oregon Klamath Basin Adjudication was certainly a McCarran Amendment case. Plaintiffs argue that, by extension, the case at bar could be considered an "enforcement action" of the ACFFOD; indeed, KID's Second Amended Complaint states that the defendants' sovereign immunity is waived "pursuant to 43 U.S.C. § 666(a), as this is a suit for the administration of rights to the use of the water of the Klamath River system." ¶ 7. *However, this is not a "state general stream adjudication case." Even if it were, the McCarran Amendment waives the sovereignty of the Indian rights at issue, not the sovereign immunity of the Tribes themselves*. *San Carlos Apache Tribe of Arizona*, 463 U.S. at 566 n. 17, 103 S.Ct. 3201. The distinction is unnecessary here, however, as this is clearly not a McCarran Amendment case.

*Id*. at 1181 (emphasis added). Accordingly, Judge McShane ruled both that (1) KID's declaratory judgment action was not a McCarran proceeding, and, (2) even if it were, the case should still be dismissed because there would be no waiver of the Tribes' sovereign immunity.

KID's present Motion, filed in state court but removed to federal court, presents a collateral attack on that ruling. As discussed above, regardless whether filed in state court in a general stream adjudication or federal court, KID's Motion does not present issues that are the proper subject of a general stream adjudication or within the waiver of the United States' sovereign immunity provided by McCarran. KID candidly admits in its preliminary injunction Motion that, in its prior case, it "tried bringing suit to enforce these rights in federal court in 2019, only to be told that that suit was not a suit for the 'administration' of water rights in a general stream adjudication . . . ." Motion at 26. The re-packaging and re-filing of KID's prior claims in the KBA does not change the nature of the claims or establish jurisdiction. Further, KID's Motion squarely conflicts with Judge McShane's ruling that the Tribes' are necessary and indispensable parties to the resolution of these issues and the McCarran Amendment provides no waiver of the Tribes' sovereign immunity that would allow their involuntary joinder. Having failed to join the Tribes to the present lawsuit and having failed to demonstrate that its Motion presents issues that may be resolved in a general stream adjudication,[6] KID should not be permitted to proceed with this collateral attack on Judge McShane's dismissal of its prior lawsuit raising similar claims.

---

[6] KID's opening brief in its appeal of the Court's dismissal of its prior lawsuit focuses heavily on its argument that the Court erred in determining its prior case was not a case for the administration of water rights that falls within the waiver of the sovereign immunity under McCarran. *See* Ex. 1. Indeed, this is KID's leading argument in the appeal, and KID dedicates more than 25 pages to this issue in its brief. *Id*. at 22-49. The Ninth Circuit should resolve this issue before KID should be permitted to seek to litigate it in yet another forum.

**C. Federal courts have repeatedly held that federal law requirements arising under the ESA and senior federal reserved tribal fishing and water rights can require Reclamation to limit diversions of Project irrigators (including those within Klamath Irrigation District).**

Even were the court to look past these jurisdictional defects in the Motion and reach the merits of KID's likelihood of success on the merits, KID's Motion would be unlikely to succeed. Federal courts have consistently ruled that Klamath Project operations are subject to the ESA and that state-based water rights must yield to the ESA and downstream tribal water rights, to the extent state and federal law conflict. *See Baley*, 942 F.3d at 1323 ("As noted, the Klamath Project is subject to the requirements of the ESA. In addition, . . . the Ninth Circuit has declared the rights of Klamath Project water users to be subservient to the requirements of the ESA"); *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1213 (9th Cir. 1999) ("Because Reclamation retains authority to manage the Dam, and because it remains the owner in fee simple of the Dam, it has responsibilities under the ESA as a federal agency. These responsibilities include taking control of the Dam when necessary to meet the requirements of the ESA, requirements that override the water rights of the Irrigators."); *Yurok Tribe v. U.S. Bureau of Reclamation*, 231 F. Supp. 3d 450, 455 (N.D. Cal. 2017) (Reclamation's continued operation of the Klamath Project without having completed reinitiated consultation was a violation of the ESA); *Kandra v. United States*, 145 F. Supp. 2d 1192, 1207 (D. Or. 2001) ("Plaintiffs first argue that the purpose of the Klamath Project, pursuant to the Reclamation Act, is irrigation. Plaintiffs allege that the RPAs [reasonable and prudent alternatives] adopted by Reclamation benefit fish to the detriment of irrigation, and the RPAs are therefore inconsistent with the Project's purpose . . . . These arguments are without merit."); *id*. ("Next, plaintiffs attempt to argue that no provision of the ESA compels Reclamation to take action to release *previously stored water* to augment the flow of the Klamath River . . . . Plaintiffs present no

support for this novel interpretation of the ESA.") (emphasis added); *Pacific Coast Federation of Fishermen's Associations v. U.S. Bureau of Reclamation*, 138 F. Supp. 2d 1228, 1245 (N.D. Cal. 2001) ("Because the Bureau did not initiate [ESA] consultation, it had no basis or authority to implement the 2000 Operations Plan and it violated the ESA when it did so."). These cases—some of which involved KID as a party—demonstrate that KID is unlikely to prevail on any claim that water diverted and stored in Upper Klamath Lake under state-based rights in Oregon is immune from the ESA and downstream tribal reserved rights.[7]

And beyond the Klamath Basin, courts have consistently rejected the argument that tribal water rights for fish are limited to "natural flow" as opposed to "stored water" from subsequently constructed Reclamation projects. *See, e.g.*, *Washington Dep't of Ecology v. Acquavella*, No. 77-2-01484-5, Memorandum Opinion Re: Motion to Limit Treaty Water Right For Fish for Natural Flow, No. 77-2-01484-5, slip op. at 32 (Wash. Super. Ct. Apr. 2, 1996) (included in Ex. 2 at PDF pages 2-34) (holding that in times of shortage, and when the project superintendent so determines, "storage water may be released" to satisfy treaty-reserved fishing right);[8] *Carson-*

---

[7] KID has not filed a complaint or articulated an actionable cause of action. However, had it done so, it presumably would have to overcome the Administrative Procedure Act's standard of review, which is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric*., 499 F.3d 1108, 1115 (9th Cir. 2007) (citation omitted); *accord Lands Council v. McNair*, 537 F.3d 981 993 (9th Cir. 2008) (*en banc*).

[8] *See also Kittitas Reclamation Dist. v. Sunnyside Valley Irr. Dist.*, 763 F.2d 1032, 1035 (9th Cir. 1985) (affirming lower court's authority to order release of water from a project reservoir based upon tribe's reserved fishing right); *Washington Dep't of Ecology v. Acquavella,* No. 77-2-01484-5, Memorandum Opinion Re: Flushing Flows, slip op. at 1-3 (Wash. Super. Ct. Apr. 13, 1995) (included in Ex. 2 at PDF pages 36-38) (denying irrigation districts' request that "Reclamation be enjoined from releasing storage water from the reservoirs serving the Yakima Project" in order to maintain fish life); *Washington Dep't of Ecology v. Acquavella,* No. 77-2-01484-5, Memorandum Opinion Re: Flushing Flows, slip op. at 12 (Wash. Super. Ct. Dec. 22, 1994) (included in Ex. 2 at PDF pages 40-52) (recognizing Reclamation Field Office Manager's authority "to release flushing flows as a means *to maintain* fish life.").

*Truckee Water Conservancy Dist. v. Clark*, 741 F.2d 257, 261, 262 (9th Cir. 1984), *cert. denied sub nom. Nevada v. Hodel,* 470 U.S. 1083 (1985) (authorized project purposes may be superseded by tribal rights and ESA obligations for the use of Reclamation project stored water).

The ACCFOD does nothing to change these precedents. Though Section 8 of the Reclamation Act, 43 U.S.C. § 383, provides as a general matter that state law shall govern the appropriation, distribution, and use of water under federal reclamation projects, this language is limited to the appropriation of water for Project purposes, such as irrigation. *See Baley*, 942 F.3d at 1319-20 ("Section 8 of the Reclamation Act requires the Secretary of the Interior to comply with state law *regarding the appropriation of water for irrigation*, to the extent such law is not inconsistent with federal law.") (emphasis added). Section 8 does not direct that Reclamation must appropriate water to comply with other requirements of federal law, such as the ESA. Contrary to KID's suggestions, Reclamation's release of water downstream to the Klamath River is not undertaken voluntarily for Reclamation's "own instream purposes." Motion at 10. Rather, Reclamation makes such releases pursuant to congressional direction in the ESA, which requires Reclamation to ensure that its action of operating the Klamath Project does not jeopardize the continued existence of ESA-listed species or adversely modify their critical habitat, 16 U.S.C. § 1536(a)(2), as well as to be consistent with downstream reserved tribal water rights in California.

Further, to the extent Section 8 creates a conflict between state-law based water rights determined under the ACFFOD and the express federal-law directives of the ESA to avoid jeopardy to listed species and adverse modification of their critical habitat, the Supreme Court has made clear that "state water law does not control in the distribution of reclamation water if inconsistent with other congressional directives to the Secretary." *United States v. California*, 438 U.S. at 668 n.21; *see also* Reed D. Benson, "Dams, Duties, and Discretion: Bureau of

Reclamation Water Project Operations and the Endangered Species Act," 33 Colum. J. Envtl. L. 1, 43-44 (2008). The requirements of the ESA constitute this very type of express directive, and the broad and ambiguous mandate of the Reclamation Act to act in accordance with state water law such as the ACFFOD does not override these congressional commands.[9] The Supreme Court's ruling in *California* is dispositive here.

These cases, along with those cited above involving the Klamath Project, demonstrate that KID is unlikely to succeed on its current claims. That KID cannot demonstrate likelihood of success on the merits is not entirely a hypothetical inquiry in this case; it is already well-established that federal law obligations arising under the ESA and senior federal reserved tribal fishing and water rights in California can require Reclamation to limit the diversions of Project irrigators (including those within KID) who hold junior, state-law based water rights. As KID has failed to make this threshold showing, the Court need not consider the remaining *Winter* elements for preliminary injunctive relief. *Garcia*, 786 F.3d at 740. But as described in the following section, these factors also favor denial of the preliminary injunction.

Finally, the Court need not seek to ultimately resolve these complex issues of federal law on KID's Motion for preliminary injunction, which only requires the Court to consider the likelihood of success on the merits. Per the above discussion, the weight of the authority strongly favors the United States' position, and further consideration of these issues should be

[9] KID's reliance on *National Association of Home Builders v. Defenders of Wildlife* ("*Home Builders*"), 551 U.S. 644 (2007), does not compel a different result. In that case, the Supreme Court held that the Clean Water Act provision at issue left EPA no discretion as to whether to transfer permitting authority to state officials if nine specific criteria were met. *Id*. at 671–672. By contrast, in the context of Klamath Project operations, the broad mandate of Section 8 of the Reclamation Act to act in accordance with state law (*e.g*., the ACFFOD) in appropriating water for Project purposes does not deprive Reclamation of discretion to develop and implement Project operations in a way that could benefit ESA-listed species and/or their critical habitats. *See San Luis & Delta-Mendota v. NMFS*, 747 F.3d 581 (9th Cir. 2014).

decided in a properly-framed case. In this regard, the United States anticipates that litigation raising the issues that KID seeks to raise in its present Motion is imminent in the U.S. District Court for the Northern District of California. The undersigned counsel for the United States in this case have conferred with the Executive Director and counsel for the Klamath Water Users Association, a non-profit corporation whose members are Klamath Project contractors, such as KID. *See* Ex. 3 (attached). Based on these discussions, we understand that the Klamath Water Users Association plans to file by April 14 or soon thereafter motions to lift the stay and for summary judgment in current Klamath Project litigation filed by the Yurok Tribe against the United States and in which the Klamath Water Users Association and the Klamath Tribes have intervened (Civil No. 3:19-cv-04405-WHO (N.D. Cal.)). *See id*. This litigation challenges the sufficiency of Reclamation's ESA compliance with respect to Klamath Project operations, and the motion for summary judgment will contest issues of federal law and the interpretation of section 7(a)(2) of the ESA, including whether Reclamation has an obligation to release water from Project storage for the benefit or purported benefit of ESA-listed species. *See id*. Assuming the Court agrees to lift the stay, KID could seek to intervene and litigate the issues that it seeks to raise in its Motion here in that case, which is anticipated to involve comprehensive, summary judgment briefing.

In addition, KID could seek compensation in the Court of Federal Claims for any taking of its water rights that it alleges to have occurred in connection with the present or future operations of the Klamath Project. *See* 28 U.S.C. § 1491. But KID's attempt to resolve these important issues of federal law based on limited, emergency briefing on a motion for preliminary injunction, over which the Court lacks jurisdiction, is inappropriate and without merit, as the

federal courts have consistently ruled that Reclamation's operation of the Project must comply with the ESA and be consistent with reserved tribal water rights.

**II. KID fails to demonstrate it is likely to suffer harm that is irreparable in the absence of a preliminary injunction.**

In addition to its failure to demonstrate likelihood of success on the merits, KID also fails to demonstrate irreparable harm is likely. While the United States acknowledges the financial concerns expressed by declarations from KID's members, KID fails to meet the irreparable harm prong for preliminary injunctive relief in demonstrating harm limited to the economic interests asserted by individual irrigators who receive Project water within the district's boundaries. Motion at 14-20. Courts generally hold that financial or economic injuries are not "irreparable" harm to justify a preliminary injunction under Fed. R. Civ. P. 65. *Regents of Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 519 (9th Cir. 1984) (a plaintiff seeking a preliminary injunction must "demonstrate more than simply damages of a pecuniary nature."); *see also Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 738 (9th Cir. 2001) ("loss of anticipated revenues . . . does not outweigh the potential irreparable damage to the environment."); *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("such monetary injury is not normally considered irreparable."). Moreover, KID firmly embraces the view that financial compensation—Reclamation's purchase of KID's water rights or Reclamation's posting of a bond and agreement to pay all damages—would be alternative remedies to a preliminary injunction here. Motion at 2, 19-20, 23.

As discussed in more detail below, rather than preventing irreparable harm, granting KID's requested injunction is likely to cause irreparable harm to ESA-listed species. For this reason, the equities and public interest in ensuring the survival of ESA-listed species sharply weigh against granting the requested injunction.

**III. The balance of the equities and the public interest favor denial of the requested injunction, which would prevent Reclamation from complying with the ESA and fulfilling senior federal reserved water and fishing rights.**

In litigation involving the ESA, the balance of harms and public interest factors are merged and presumed to weigh in favor of protecting listed species. *Nat'l Marine Wildlife Fed'n*, 886 F.3d at 817. As the Supreme Court has explained, "Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities . . . ." *Tenn. Valley Authority v. Hill,* 437 U.S. 153, 194 (1978); *see also Sierra Club v. Marsh*, 816 F.2d 1376, 1383 (9th Cir. 1987) ("[i]n Congress' view, projects that jeopardize the continued existence of endangered species threatened incalculable harm; accordingly, it decided that the balance of hardships and the public interest tip heavily in favor of endangered species"), *abrogated on other grounds as recognized in Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1088-91 (9th Cir. 2015). Consistent with this authority, the Federal District Court for the Northern District of California, in prior ESA litigation between Reclamation and the Yurok and Hoopa Valley Tribes over the operation of the Klamath Project, awarded injunctive relief requiring additional downstream releases for the benefit of SONCC coho, notwithstanding the alleged economic impacts on Project irrigators. *Yurok Tribe*, 231 F. Supp. 3d at 485 ("The intervenor defendants undeniably have genuine and important interests, and the court recognizes that the proposed measures might cause hardship to the farmers, ranchers, and their communities. However, as plaintiffs point out, courts are not permitted to favor economic interests over potential harm to endangered species") (citing *Tenn. Valley Authority*, 437 U.S. at 184)).

Here, KID's Motion fails to meet the public interest and balance of the equities prongs because the requested injunctive relief would not remedy an irreparable harm and is likely to

instead cause irreparable harm to the ESA-listed SONCC coho salmon, adversely modify its critical habitat, and deprive downstream Klamath Basin tribes of their senior, federally protected fishing and water rights. FWS and NMFS have determined in a series of biological opinions over the last two decades that Reclamation's operation of the Klamath Project for the benefit of Project irrigators adversely affects listed suckers and SONCC coho and the salmon's critical habitat. For that basic reason, Reclamation's operations plan, on which it has consulted with FWS and NMFS under the ESA, includes provisions to ensure minimum streamflows downstream of the Project in the Klamath River to avoid jeopardizing the continued existence of the SONCC coho or adversely modifying its critical habitat, as well as high-flushing flow events under certain parameters to mitigate the threat of disease to coho. NMFS and FWS have determined in biological opinions and supplemental analysis that the operations specified in those plans will avoid jeopardy to listed species and adverse modification of their critical habitat. It is not always possible for Reclamation to sustain the above-referenced minimum flows and/or surface flushing flow using solely live or natural flow, as determined by OWRD.[10] Thus, KID's requested preliminary injunction prohibiting Reclamation from making any releases of water that is deemed to have been stored in Upper Klamath Lake would prevent Reclamation from meeting

---

[10] KID does not appear to challenge that Reclamation may release "natural flow" from Upper Klamath Lake based on ESA requirements and downstream reserved water rights of the Yurok and Hoopa Valley Tribes in California, but instead focuses its challenge on "stored" water –*i.e.*, water stored in Upper Klamath Lake for later release that KID contends is available only for satisfaction of state-based water rights decreed in the ACFFOD. As explained, the Klamath Project did not create a new storage reservoir; it modified the existing Upper Klamath Lake to enable the regulation of natural storage capacity and otherwise substantially modified the hydrology of the basin. The United States does not concede that stored waters and natural flows can be meaningfully distinguished in this context for purposes of determining waters available for release for downstream purposes. In any event, the question whether Reclamation may release water from Upper Klamath Lake water in accordance with ESA requirements and downstream federal reserved rights in California (including whether any water can be deemed unavailable for these purposes as "stored" water) is an issue outside the scope of the KBA.

the above-referenced thresholds for the Klamath River and/or surface flushing flow that NMFS has determined will ensure that Klamath Project operations are "not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat." 16 U.S.C. § 1536(a)(2). Failing to ensure against jeopardy of the species and/or adverse modification of its critical habitat would frustrate Congress's plain intent to safeguard listed species. *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001) ("a court sitting in equity cannot 'ignore the judgment of Congress, deliberately expressed in legislation'" and "[o]nce Congress, exercising its delegated powers, has decided the order of priorities in a given area, it is . . . for the courts to enforce them when enforcement is sought.") (citations omitted).

These irreparable harms to ESA species and critical habitat outweigh KID's alleged economic injuries. KID does not, and cannot, make any contention that its requested injunction seeks to conserve or protect listed species. If anything, KID seems to at least implicitly concede that its requested injunction would prevent implementation of ESA protections. To be sure, KID may have a reduced irrigation supply if Reclamation releases water to meet ESA requirements and be consistent with reserved tribal rights under federal law. But the law does not allow the balance of the equities and public interest to support the alternative of allowing harm to ESA and tribal trust species that Congress has ordered protected. Thus, because KID seeks a preliminary injunction that would thwart conservation of endangered species and critical habitat contrary to the requirements of the ESA, its Motion must be denied. Congress has already decided that the balance of equities and the public interest weigh against KID's request. *See Nat'l Wildlife Fed. v. Burlington N. R.R., Inc.*, 23 F.3d 1508, 1510-11 (9th Cir. 1994) ("The 'language, history, and structure,' of the ESA demonstrates Congress' determination that the balance of hardships and

the public interest tips heavily in favor of protected species") (quoting *TVA*, 437 U.S. at 174)); *see generally* 16 U.S.C. § 1531. Indeed, Congress has directed agencies to avoid jeopardy to species, "whatever the cost." *Tenn. Valley Authority*, 437 U.S. at 184.

**IV. Denying KID's preliminary injunction motion would preserve the status quo.**

"The basic function of a preliminary injunction is to preserve the *status quo* pending a determination of the action on the merits." *Chalk v. U.S. Dist. Ct. Cent. Dist. of California*, 840 F.2d 701, 704 (9th Cir. 1988). Requests for injunctions that go "well beyond simply maintaining the status quo," *i.e.*, mandatory injunctions requiring a party to take some affirmative action, are "particularly disfavored" and "are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d at 878-79 (quotation marks and citation omitted). Moreover, a party seeking a mandatory injunction "must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Garcia*, 786 F.3d at 740. KID has failed to make that showing here.

Here, the over-20-year status quo has been Reclamation's operation of the Project to comport with federal ESA obligations and senior federal reserved water rights for tribes in California that are beyond the jurisdictional reach of the KBA. And, as required by the ESA and tribal reserved water rights, Reclamation has suspended water deliveries for junior state-law based irrigation rights based on its competing federal law obligations. KID unsuccessfully challenged this status quo 20 years ago in *Kandra* and concedes that similar Reclamation operations continued through recent years. *See* Motion at 8 (stating that Reclamation used "stored water" from Upper Klamath Lake for ESA purposes in 2019 and 2020). This well-known, decades-long status quo undercuts the very basis of KID's "emergency" relief demand.

Thus, KID's requested relief—requiring Reclamation to fundamentally change its operations, to stop ensuring ESA-minimum flows that also support senior tribal reserved rights in California, and to limit its delivery solely to those with state-law based irrigation rights in Oregon in times of shortage —is not an injunction to preserve the status quo, but rather a "disfavored" mandatory injunction that goes much further. KID has not satisfied its heightened burden.

To argue that the status quo is in its favor, KID quotes from a brief filed by the United States in state court in opposition to a petition for partial stay sought by irrigators within the Upper Klamath Basin (*i.e.*, the rivers and tributaries that flow into Upper Klamath Lake), in which the United States said "[t]he status quo is that the Project water rights [found in the ACFFOD] are now enforceable." *See* Motion at 12; Rietmann Decl. Ex. M at 45 (PDF page 181). But that matter dealt with an attempt by the Upper Basin irrigators who had junior water rights under the ACFFOD, to stay its enforcement, and whether the irrigators could continue taking water out of priority under state law. It had nothing to do with competing federal law obligations arising under the ESA, the senior federal reserved tribal fishing and water rights in California, or the relationship between state-law based water rights in the ACFFOD and Reclamation's federal law obligations.[11]

Because KID seeks to alter the long-established, and long-approved status quo when it comes to Project operations—specifically those that ensure the survival of ESA-listed species

[11] To the extent KID also relies upon memoranda issued by former Secretary Bernhardt on January 14, 2021, as well as a January 2021 "reassessment" of Project operations, as authority on these issues, *see* Motion at 19; Rietmann Decl. at Exs. D, E, and F, Secretary Haaland has withdrawn those memoranda as contrary to longstanding Interior positions and interpretations of governing law and stated that they are not to be relied on for any purpose. *See* April 8, 2021 Memorandum from the Secretary of the Interior, available online at: https://www.usbr.gov/mp/kbao/docs/secInt-memo-ebSB46-00673-klamath-withdawal-2021-04-08-final.pdf.

and critical habitat, as well as bare minimum flows for senior federal reserved fishing and water rights of tribes downstream tribes—and because KID has failed to meet the heightened burden for doing so, its request for preliminary injunctive relief should be denied.

## CONCLUSION

For all the foregoing reasons, KID's Motion should be denied.

Respectfully submitted this 12th day of April, 2021.

JEAN E. WILLIAMS
Acting Assistant Attorney General

s/ Thomas K. Snodgrass
THOMAS K. SNODGRASS,
Colorado Bar No. 31329
Senior Attorney, U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Tel: (303) 844-7233; Fax: (303) 844-1350
Email: Thomas.Snodgrass@usdoj.gov

s/ Robert W. Williams
ROBERT P. WILLIAMS,
District of Columbia Bar No. 474730
Senior Trial Attorney
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 305-0206; Fax: (202) 305-0275
Email: robert.p.williams@usdoj.gov

*Attorneys for the United States Bureau of Reclamation*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b), because it contains 10,397 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

*s/ Thomas K. Snodgrass*
THOMAS K. SNODGRASS, Senior Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202

**CERTIFICATE OF SERVICE**

I certify that on April 12, 2021, the foregoing was electronically filed with the Court's electronic filing system.

*s/ Thomas K. Snodgrass*
THOMAS K. SNODGRASS, Senior Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202