IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

KLAMATH IRRIGATION DISTRICT,

        Plaintiff,

    v.

U.S. BUREAU OF RECLAMATION,

        Defendant,

    and

OREGON WATER RESOURCES DEPARTMENT,

        Intervenor Defendant.

Civ. No. 1:21-cv-00504-AA

**OPINION & ORDER**

_____

AIKEN, District Judge.

    This case comes before the Court on an Amended Motion to Remand filed by Plaintiff Klamath Irrigation District ("KID"). ECF No. 19. For the reasons set forth below, KID's motion is DENIED.

### LEGAL STANDARD

    Federal courts are courts of limited jurisdiction and only have subject-matter jurisdiction over matters authorized by the United States Constitution and Congress. *Bender v. Willamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986); *Couch v. Telescope,*

*Inc.*, 611 F.3d 629, 632 (9th Cir. 2010). "Challenges to the existence of removal jurisdiction should be resolved within [the] same framework" as that applicable to motions to dismiss for lack of subject-matter jurisdiction due to "the parallel nature of the inquiry." *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014).

A motion to remand is the proper procedural vehicle for challenging removal. *Babasa v. LensCrafters, Inc.*, 498 F.3d 972, 974 (9th Cir. 2007). Removal is authorized when the state court action is against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United State or of any agency thereof sued in an official or individual capacity for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). Section 1442(a)(1) is interpreted "broadly in favor of removal." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

The party seeking removal bears the burden of establishing by a preponderance of the evidence that all removal requirements have been met. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). Thus, if a plaintiff challenges the defendant's removal of a case, the defendant bears the burden of establishing the propriety of the removal. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010).

## BACKGROUND

The United States Bureau of Reclamation ("Reclamation") operates the Klamath Project (the "Project") to deliver water from Upper Klamath Lake ("UKL")

and its tributaries to water users in southern Oregon and northern California. As part of the Project, Reclamation operates dams controlling the flow of water from the UKL. Reclamation holds water rights for the Project acquired in conformity with the requirements of state law. Reclamation also holds federal reserved water rights for the Klamath Tribes for instream fisheries purposes in UKL and the tributaries above UKL in Oregon.

These rights are subject to the jurisdiction of the Klamath Basin Adjudication ("KBA"), a comprehensive general stream adjudication in Oregon state court. The comprehensive stream adjudication for the Klamath Basin began in 1975. In February 2014, Oregon entered an Amended and Corrected Findings of Fact and Final Order of Determination ("ACFFOD") in the Klamath County Circuit Court and the determination of rights entered the judicial phase of adjudication, which remains ongoing. While the KBA is pending, the status quo of water rights found in the ACFFOD is enforceable.

Reclamation also operates in accordance with the requirements of the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-44. The ESA applies with respect to (1) two species of endangered sucker fish with critical habitat in UKL; (2) threated Southern Oregon/North California Coast ("SONCC") coho salmon with critical habitat in the Klamath River, downstream of the Project; and (3) endangered killer whales in the Pacific Ocean that prey on Chinook salmon which, although not listed under the ESA, inhabit the Klamath River downstream of the Project. Biological opinions issued by the U.S. Fish and Wildlife Service and the National Marine

Fisheries Service have determined that certain water levels are necessary in UKL to maintain critical habitat for the endangered sucker fish and that certain flow levels are necessary in the Klamath River to maintain critical habitat for the salmon.

Reclamation also operates the Project in accordance with the senior downstream federal tribal reserved water rights of the Yurok and Hoopa Valley Tribes in California. Unlike the reserved water rights of the Klamath Tribes of Oregon, the reserved water rights of the Yurok and Hoopa Valley Tribes of California have not been adjudicated in the KBA. However, the Federal Circuit has determined that the water rights of the Yurok and Hoopa Valley Tribes for instream fisheries purposes are senior to the Project's water rights and, although not yet determined in California, are "[a]t a minimum" equal to the amount of water needed under the ESA to avoid jeopardy to the salmon in the Klamath River. *Baley v. United States*, 942 F.3d 1312, 1337 (Fed. Cir. 2019).

This arrangement is complicated by a severe and prolonged drought in the Klamath Basin, which has reduced the amount of water available in the Project area. Reclamation has continued to release water from UKL into the Klamath River to preserve the salmon and satisfy the water rights of the Yurok and Hoopa Valley Tribes while limiting the amount of water released for irrigation by the Project water users.

KID is a contractor for the Klamath Project and a participant in the KBA. KID asserts that Reclamation has the right to store water in UKL, but that the agency has no authority to release water from UKL for instream uses, such as meeting

Reclamation's obligations under the ESA or satisfying the reserved water rights of the Yurok and Hoopa Valley Tribes unless Reclamation first seeks a stay of the ACFFOD and posts a bond. KID filed a motion for a preliminary injunction in the KBA seeking to enjoin Reclamation from releasing any water stored in the UKL under the Project's storage water rights except to satisfy the irrigation demands of the Project's water users under the Project's state law-based water rights held for beneficial use. Notice of Removal Ex. 1, at 4. ECF No. 1-1.

Such an injunction would prevent Reclamation from releasing water from UKL to meet its obligations under the ESA or to satisfy the senior downstream rights held by the Yurok and Hoopa Valley Tribes. Reclamation takes the position that operations in accordance with its federal obligations—to the downstream tribes and under the ESA—are beyond the jurisdiction of the KBA and so removed the motion for preliminary injunction from the Klamath County Circuit Court to this Court.

## DISCUSSION

As noted, Reclamation removed KID's preliminary injunction motion from the KBA to this Court. Federal law permits the removal of a civil action commenced in state court "that is against or directed to" the "United States or any agency thereof." 28 U.S.C. § 1442(a)(1). For purposes of removal, the agency need only "allege a colorable defense under federal law." *Mesa v. California*, 489 U.S. 121, 129 (1989). "[T]he right of removal under § 1442(a)(1) is made absolute whenever a suit in a state court is for any act 'under color' of federal office regardless of whether the suit could originally have been brought in a federal court." *Willingham v. Morgan*, 395 U.S.

402, 406 (1969). "Federal jurisdiction rests on a federal interest in the matter." *Id.* (internal quotation marks and citation omitted).

In this case, KID seeks to remand consideration of its motion for preliminary injunction to the KBA on the basis that the KBA has prior exclusive jurisdiction over the issues raised in the motion for preliminary injunction. The doctrine of prior exclusive jurisdiction provides that "when a court of competent jurisdiction has obtained possession, custody, or control of particular property, that possession may not be disturbed by any other court." *State Eng'r of State of Nevada v. South Fork Band of the Te-Moak Tribe of Western Shoshone Indians of Nevada*, 339 F.3d 804, 809 (9th Cir. 2003). The doctrine is "no mere abstention rule," but "a mandatory jurisdictional limitation." *Id.* at 810. The doctrine of prior exclusive jurisdiction applies in the context of water rights. *Id.* Here, KID contends that the doctrine applies to give the KBA exclusive jurisdiction over the water in the Klamath Basin and the Project.

In its Response, Reclamation contends that the KBA entirely lacks jurisdiction over the issues raised in KID's motion for preliminary injunction, due to sovereign immunity, and so the KBA does not possess prior exclusive jurisdiction over the motion. "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

"Sovereign immunity is jurisdictional in nature" and "the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (internal quotation marks and citation omitted, alterations normalized). "The Supreme Court has frequently held that a waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." *Dunn & Black P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007) (internal quotation marks and citation omitted, alterations normalized). "As the contours of any such waiver define a court's authority to entertain a suit against the government, each claim against the government must rest upon an applicable waiver of immunity." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1167-68 (9th Cir. 2017) (internal citation omitted).

In this case, KID contends that the United States has waived sovereign immunity under the McCarran Amendment, 43 U.S.C. § 666(a). The McCarran Amendment provides:

> Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amendable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: *Provided*, That no judgment for costs shall be entered against the United States in any such suit.

43 U.S.C. § 666(a).

The Supreme Court has held that, for purposes of the McCarran Amendment, a "river system" is to be "read as one within the particular State's jurisdiction," because "[n]o suit by any State could possibly encompass all of the water rights in the entire Colorado river which runs through or touches many States." *United States v. District Court in and for Eagle Cnty., Colo.*, 401 U.S. 520, 523 (1971); *Baley*, 942 F.3d at 1341 ("Moreover, states have the ability to adjudicate rights in a water or river system within their jurisdiction, but they cannot adjudicate water rights in another state.").

The McCarran Amendment is "not intended . . . to be used for any other purpose than to allow the United States to be joined in a suit wherein it is necessary to adjudicate all of the rights of various owners on a given stream. This is so because unless all of the parties owning or in the process or acquiring water rights on a particular stream can be joined as parties defendant, any subsequent decree would be of little value." *District Court in and for Eagle Cnty.*, 401 U.S. at 525 (internal quotation marks and citation omitted). The "administration of such rights" in § 666(a)(2) refers to the rights described in § 666(a)(1) "for they are the only ones which in this context 'such' could mean; and as we have seen they are all-inclusive, in terms at least." *Id.* at 524.

> The "administration" of such rights means "to execute it, to enforce its provisions, to resolve conflicts as to its meaning, to construe and to interpret its language. Once there has been such an adjudication and a decree entered, then one or more persons who hold adjudicated water rights can, within the framework of § 666(a)(2), commence among other such actions described above, subjecting the United States, in a proper case, to the judgments, orders, and decrees of the court having jurisdiction."

*San Luis Obispo Coastkeeper v. U.S. Dep't of the Interior*, 394 F. Supp.3d 984, 994 (N.D. Cal. 2019) (quoting *United States v. Hennen*, 300 F. Supp. 256, 263 (D. Nev. 1968).

In determining whether the McCarran Amendment's waiver of immunity applies, courts must examine whether the case before them is the type of adjudication described in the McCarran Amendment—that is, either a suit for adjudication of rights to the use of a water or for the administration of such rights. *United States v. Oregon*, 44 F.3d 758, 765-66 (9th Cir. 1994); *see also Fent v. Oklahoma Water Res. Bd.*, 235 F.3d 553, 555-57 (10th Cir. 2000) (holding that an action for damages and to recover funds paid pursuant to an allegedly illegal contract "cannot by any stretch of the legal imagination be characterized as an effort to obtain a comprehensive adjudication of all water rights in a water system."). As the district court observed in *San Luis Obispo Coastkeeper*, "the purpose of the McCarran Amendment is not to waive sovereign immunity whenever litigation may incidentally relate to water rights administered by the United States. It is for determining substantive water rights by giving courts the ability to enforce those determinations and to permit joinder of the United States where necessary to effectively adjudicate competing claims thereto." *San Luis Obispo Coastkeeper*, 394 F. Supp.3d at 995.

In *San Luis Obispo Coastkeeper*, the court found that the McCarran Amendment did not apply where the petitioners sought "to enforce state environmental laws requiring sufficient flows of water for Steelhead," because the action was not one to adjudicate or administer a comprehensive state court stream

adjudication. *San Luis Obispo Coastkeeper*, 394 F. Supp.3d at 995. Here, KID's motion for preliminary injunction is clearly not a seeking the adjudication of competing water rights under § 666(a)(1). Nor is it in the nature of an action to administer such rights, but is instead an enforcement action to block the release of water to satisfy the rights of California tribes which were not adjudicated in the KBA.

KID has attempted to litigate this issue in the past without success. In *Baley v. United States*, the Federal Circuit held that, in the specific case of the Hoopa Valley and Yurok Tribes, that "federal courts have consistently held that tribal water rights arising from federal reservations are federal water rights not governed by state law," and that "the volume and scope of particular reserved rights are federal questions." *Baley*, 942 F.3d at 1340 (internal quotation marks and citation omitted, alterations normalized). As noted, the Federal Circuit determined that the Tribes' right to water was at least coextensive with the requirements of the ESA to maintain the salmon in the Klamath River. *Id.* at 1337. And this right is not altered by the fact that the Tribes did not participate in the KBA. *See Id.*, at 1341 ("Nor do we believe that the Yurok and Hoopa Valley Tribes waived their rights because they did not participate in the Klamath Adjudication . . . their rights are federal reserved water rights not governed by state law . . . Thus, the Yurok and Hoopa Valley Tribes' lack of participation in the state of Oregon's Klamath Adjudication did not preclude their entitlement to water that flows in the Klamath River below the Iron Gate Dam in California.").[1]

---

[1] In rejecting the argument that the Tribes' water rights must be submitted to the KBA, the Federal Circuit cast doubt on the power of the KBA to adjudicate the water rights of the Hoopa

In *Klamath Irrigation District v. United States Bureau of Reclamation*, 489 F. Supp.3d 1168 (D. Or. 2020), KID brought an action alleging "in essence, that Reclamation lacks statutory or other authority to comply with the ESA, or to protect tribal reserved water rights held for tribal fishery needs, by reducing the amount of water to be delivered to Project irrigators pursuant to their state water rights and their contracts with Reclamation." *Id.* at 1177. In that case, KID sought a declaration "that Defendants must maintain, operate, and direct operations of the Project and Project-related facilities in accordance with the requirements of the Reclamation Act and that Defendants authorization of collection and retention and use of stored water for ESA-listed species, and use of stored water for ESA-listed species in the Klamath River, are not activities authorized by any applicable law." *Id.* at 1178 (internal quotation marks and citation omitted, alterations normalized). The court observed that "[c]ourts, including the Ninths Circuit, have held that Tribes' federal reserved treaty water and fishing rights are at least co-extensive with the government's obligations to provide sufficient water under the ESA for species survival and environmental purposes." *Id.* at 1178-79 (citing *Baley*, 942 F.3d at 1337; *Klamath Water Users Ass'n v. Paterson*, 204 F.3d 1206, 1214 (9th Cir. 2000)). "In addition, courts have repeated[ly] held and affirmed the priority that these federally reserved water rights have over competing irrigation rights." *Id.* at 1179. As a result, the court concluded that KID's primary contention, "that Reclamation has no discretion

---

Valley and Yurok Tribes, noting that "their rights are federal reserved water rights not governed by state law," and "[m]oreover, states have the ability to adjudicate rights in a water or river system within their jurisdiction, but they cannot adjudicate water rights in another state." *Baley v. United States*, 942 F.3d 1312, 1341 (Fed. Cir. 2019).

to fulfill ESA or other instream obligations prior to fulfilling water delivery obligations to Plaintiffs, as determined by the State of Oregon's Klamath Basin Adjudication and the ACFFOD," would, if successful, "ultimately either extinguish or conflict with Reclamation's obligations to provide water instream" to satisfy ESA obligations, which were coextensive with the senior water rights of the Yurok and Hoopa Valley Tribes. *Id.* at 1178.

In *Klamath Irrigation District*, the core question was whether the Tribes were necessary parties to such an action and the court concluded that they were. *Klamath Irrigation District*, 489 F. Supp.3d at 1177-81. In addition, the court concluded that sovereign immunity prevented the Tribes from being joined in the action, necessitating dismissal. *Id.* at 1181-82. In making this determination, the court considered the application of the McCarran Amendment, concluding:

> The Oregon Klamath Basin Adjudication was certainly a McCarran Amendment case. Plaintiffs argue that, by extension, the case at bar could be considered an "enforcement action" of the ACFFOD; indeed KID's Second Amended Complaint states that the defendants' sovereign immunity is waived "pursuant to 43 U.S.C. § 666(a), as this is a suit for the administration of rights to the use of the water of the Klamath River system." However, this is not a "state general stream adjudication case." Even if it were, the McCarran Amendment waives the sovereign immunity of the Indian rights at issue, not the sovereign immunity of the Tribes themselves. The distinction is unnecessary here, however, as this is clearly not a McCarran Amendment case.

*Id.* at 1181 (internal citation omitted).

Here, KID has attempted to evade the force of that ruling by bringing essentially the same challenge in Klamath County Circuit Court as part of the KBA, but the fact that they have attempted to bring their claim by filing in it within the

general stream adjudication does not automatically extend the waiver of sovereign immunity to cover KID's motion for preliminary injunction. KID's motion does not seek to adjudicate rights within a stream system, nor does it seek to administer rights already adjudicated. Rather, KID seeks to reach beyond the limited waiver of the McCarran Amendment to litigate federal issues, most notably Reclamation's release of water to satisfy the instream water rights of the Yurok and Hoopa Valley Tribes and the co-extensive demands of the ESA. As the court observed in *Klamath Irrigation District*, this is an enforcement action, not an action to adjudicate or administer rights.

Waivers of sovereign immunity are strictly construed in favor of the sovereign and the Court concludes the KID's motion for preliminary injunction does not come within the McCarran Amendment's waiver, such that the KBA would possess exclusive jurisdiction over the claim. At the very least, Reclamation has demonstrated that it possesses a colorable federal defense, sufficient to permit removal of the preliminary injunction motion to federal court. Accordingly, the Court DENIES KID's motion to remand this case.

## CONCLUSION

For the reasons set forth above, KID's Amended Motion to Remand to State Court, ECF No. 19, is DENIED.

It is so ORDERED and DATED this ___25th___ day of April, 2022.

                              /s/Ann Aiken
                              Ann Aiken
                              United States District Judge